# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| WHITECO INDUSTRIES, INC. d/b/a | ) | |
| STAR PLAZA THEATER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-64-TLS |
| | ) | |
| NON-STOP CREATIVITY | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on the motion of the Plaintiffs, Whiteco Industries, Inc.

d/b/a Star Plaza Theatre, and Whiteco Industries, Inc., as assignee, seeking Summary Judgment

as to Liability [ECF No. 48], filed on November 10, 2014. The Plaintiffs move for partial

judgment against two of the Defendants, Non-Stop Creativity Corporation ("Non-Stop") and

New Shanghai Circus, on claims of negligence under the theory of res ipsa loquitur (Count IV)

and breach of contract (Count V). On January 5, 2015, each Defendant filed its own Response

[ECF Nos. 53, 54] to the Plaintiffs' Motion. On January 23, 2015, the Plaintiffs filed a Reply

[ECF No. 57]. For the reasons presented below, the Plaintiffs' Motion is denied.

## FACTUAL BACKGROUND

The allegations stem from a fire at the Plaintiffs' theater, the Star Plaza Theatre, in

Merrillville, Indiana (the "Theatre"). The parties do not dispute that a fire started a few minutes

before the intermission. The fire affected the eastern portion of the Theatre's stage, which is the

left side of the stage from the performers' perspective ("Stage Left").

On August 15, 2010, a 2011 Tour Show Agreement was entered into between New Shanghai Circus Touring, LLC and Non-Stop d/b/a Cirque de Chine. The 2011 Tour Show Agreement identifies the "Perform [sic] Troupe" as Non-Stop Creativity Entertainment Company d/b/a Cirque de Chine, with the performance title of New Shanghai Circus. Under the 2011 Tour Show Agreement, Non-Stop Creativity Entertainment Company d/b/a Cirque de Chine would perform dozens of shows across the United States from January 11, 2011, to April 1, 2011. The Tour Show Agreement was signed by Xiaojun Kong, a vice president at New Shanghai Circus Touring, LLC, and Joe Lester, the president and chief executive officer of Non-Stop Creativity Entertainment Company. Lester is also known as Lizhi Zhao.[1]

On April 22, 2010, New Shanghai Circus Touring, LLC f/s/o New Shanghai Circus agreed to perform at the Theatre as part of the tour. The performance took place on February 9, 2011. Lester's signature appears on the contract between the Theatre and New Shanghai Circus Touring, LLC. Lester testified that a representative signed on his behalf (Lester Dep. 20:11–21), and the signature, dated January 21, 2011, is followed by "NSC Touring LLC." (Pls.'s Mot. Summ. J. Ex. 6-Complaint and Performance Agreement, at 10, ECF No. 51-3.)

On February 9, 2011, Lester's representative, Kate Kong, served as the circus's performance team coordinator at the Theatre.[2] Before and during the show, Kong communicated with Alex Evolga, the Theatre's stage manager and light booth operator. Although Kong gave

---

[1] The Response by New Shanghai Circus purports to explain the relationship between Non-Stop Creativity Corporation and the various "Shanghai entities" by identifying Lester as the owner and president of all the organizations. However, further details remain unclear given the cited support. In his deposition, Lester identified himself as president of "Non-Stop Creativity" (Lester Dep. 9:8–18) and "President of New Shanghai Circus Tour." (Lester Dep. 9:2.) Although the Court notes that attorney T. Scott Abell has entered his appearance for (1) New Shanghai Circus; (2) New Shanghai Circus Touring, LLC; and (3) The New Shanghai Circus Tour, LLC [ECF No. 14], Lester's deposition testimony does not state his position in any of these entities.

[2] Defendant New Shanghai Circus has stated that Ms. Kong is currently in China.

lighting cues to Evolga during the performance, Evolga controlled the lighting from the light booth. The Theatre supplied the lighting equipment and Evolga supervised a Theatre employee who placed four stage lights before the show. These lights were 1000-watt Par 64 lights that sat on the stage floor. The Theatre employee positioned one of these lights on Stage Left, approximately 3 feet from the middle curtain and 11.5 feet from the front curtain (the "Light"). The Theatre employee used gaffer's tape to secure the Light to the floor. During the show, the Theatre's lighting technician, Mike Dearmond, was in the sound booth. From this position, Dearmond could see the stage area where the Light was located. The performers did not use this stage area for entrance and exit. Instead, the performers used a designated area adjacent to the Light, but closer to the stage's back wall, with the middle curtain separating the Light from this entrance and exit area.

During the performance, Kong sat at a table in the designated entrance and exit area, from which she monitored the entrance and gave directions to the performers. While sitting in the sound booth a few minutes before the intermission, Dearmond witnessed smoke on Stage Left. Upon seeing this, Dearmond exited the sound booth, walked past Kong after she attempted to prevent him from entering the stage, and moved toward center stage around the end of the middle curtain. Looking toward the audience, Dearmond saw an "orange glow" from the front curtain that was approximately three feet above the stage floor. At this time, Dearmond left to pull the fire alarm and obtain a fire extinguisher. However, Dearmond was unable to control the fire.

This fire activated the Theatre's automatic fire sprinkler. The Theatre was evacuated and the performance did not resume. The Plaintiffs' certified fire inspector and analyst, Thomas R. Rotering, observed fire damage to "the wooden stage flooring, the stage curtain, isolated portions

of the ceiling, and sound and lighting equipment," with "moderate smoke damage decreasing in severity moving away from" Stage Left. (Rotering Aff. Ex. B, at 2, ECF No. 50-3.) Kong reported the fire to Lester. According to Lester, Non-Stop supplied the performers who appeared at the Theatre (Lester Dep. 17:4–9), all of whom were from China and have returned to China because they held temporary visas. (Lester Dep. 22:21–23:3.)

## SUMMARY JUDGMENT STANDARD

The moving party bears the responsibility of informing the court of the basis for summary judgment and identifying the pleadings, depositions, answers to interrogatories, and admissions, along with any affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The nonmoving party must go beyond the pleadings and designate specific facts that show there is a genuine issue for trial by his own affidavits or depositions, answers to interrogatories, and any admissions on file. *Celotex,* 477 U.S. at 324. When reviewing evidence to determine if there is a genuine issue as to a material fact, the court should draw all reasonable inferences in favor of the nonmoving party. *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 702 (7th Cir. 2009). The judge's role in summary judgment is to determine whether there is a genuine issue for trial, not to weigh the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

# DISCUSSION[3]

## A.     Res Ipsa Loquitur

Under Indiana law, res ipsa loquitur is an evidentiary rule that allows an inference of negligence to be drawn from a factual scenario. *Newell v. Westinghouse Elec. Corp.*, 36 F.3d 576, 578–79 (7th Cir. 1994) (citing *Pedersen v. White-Evans Elevator Co.*, 511 N.E.2d 460, 463 (Ind. Ct. App. 1987)). When a party moves for summary judgment and res ipsa loquitur is invoked, the court must decide whether the plaintiff has shown (1) that the injuring instrumentality was in the defendant's exclusive management and control; and (2) that the accident would not ordinarily occur absent negligence by those with management and control.[4]

---

[3] Without citing to any evidence or case law to support its statement, New Shanghai Circus's Response identifies this case as "primarily a subrogation case brought by Charter Oak Fire Insurance Company in the name of Whiteco Industries, Inc. d/b/a Star Theatre, to recoup monies paid for property damage . . . at its insured's place of business." (New Shanghai Circus's Response 1, ECF No. 54). New Shanghai Circus continues in a footnote, "Charter Oak Fire Insurance Company admittedly paid damages beyond Whiteco's $25,000 deductible. Thus, it is the real party in interest from the portion for which it seeks to recover pursuant to FRCP 17. However, it is not a named party plaintiff." (New Shanghai Circus's Response 1 n.1.) This argument appears to be drawn from the Complaint, where the Plaintiffs state "Charter Oak was required to and did pay $597,196.28 to restore the property to its pre-damaged condition" and "Plaintiff Whiteco was required to and did pay its $25,000.00 deductible interest in this matter." (Compl. ¶¶ 19–20, ECF No. 1.) The Answer submitted on behalf of Non-Stop and New Shanghai Circus denies paragraph 19 and states the Defendants' lack sufficient information to admit or deny paragraph 20. (Answer ¶¶ 5–6, ECF No. 8.) The Court will not address this point other than to acknowledge that under both federal law and Indiana law, the general rule is that if an insurer has paid the entire claim to its insured pursuant to the insurance policy, the insurer is the real party in interest. *Krueger v. Cartwright*, 996 F.2d 928, 931–32 (7th Cir. 1993) (citing *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380–81 (1949)); *Risner v. Gibbons*, 197 N.E.2d 184, 187 (Ind. App. 1964). Indiana allows an insured to sue in its own name when the insured had to pay a deductible to the insurer. *Steury v. N. Ind. Pub. Serv. Co.*, 510 N.E.2d 213, 215 (Ind. Ct. App. 1987) (holding the insured who paid a $100 deductible could sue in his own name and recover the full amount of the loss, and distribute a proportion of the proceeds to the insurer); *Risner*, 197 N.E.2d at 185–86, 188 (allowing an insured motorist to bring suit in her name when all but $50 was paid to her under her deductible policy). Further, the federal rules govern in whose name an action should be brought, and if a plaintiff has a substantive right under state law, it is a real party in interest for purposes of Rule 17(a). 6A Charles Alan Wright & Arthur R. Miller, et al., *Federal Practice and Procedure* § 1544 (3d ed.).

[4] Some Indiana cases identify "the absence of plaintiff's negligence" as a necessary element of res ipsa loquitur. *K-Mart Corp. v. Gipson*, 563 N.E.2d 667, 669 n.3 (Ind. Ct. App. 1990). After Indiana's

*Maroules v. Jumbo, Inc.*, 452 F.3d 639, 643 (7th Cir. 2006) (stating that whether res ipsa loquitur applies in a negligence case is a mixed question of law and fact (citing *Syfu v. Quinn*, 826 N.E.2d 699, 703 (Ind. Ct. App. 2005))); *Newell*, 36 F.3d at 578–79 (citing *K-Mart Corp. v. Gipson*, 563 N.E.2d 667, 669 (Ind. Ct. App. 1990)). A successful res ipsa loquitur showing does not mean the plaintiff has won the case, it "simply creates an inference which the trier of fact may choose to accept or not." *Maroules*, 452 F.3d at 642–43 (citing *Rector v. Oliver*, 809 N.E.2d 887, 891 (Ind. Ct. App. 2004)); *Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.*, 437 N.E.2d 1360, 1365 (Ind. Ct. App. 1982) ("[T]he inference of negligence . . . is placed upon the scales to be weighed by the trier of facts with any and all explanations and other evidence.").

Res ipsa loquitur is based on the principle "that certain accidents are so unusual that the party shown to be in exclusive control of the injuring object ought to be held responsible unless that party can offer a reasonable explanation." *Newell*, 36 F.3d at 579. For example, a plaintiff who opens a new tin of chewing tobacco and finds a human toe is relieved from having to show what act caused the toe's inclusion. *Id.* (citing *Pillars v. R.J. Reynolds Tobacco Co.*, 78 So. 365, 366 (Miss. 1918)). The Plaintiffs argue that res ipsa loquitur applies in a scenario where a stage light in the Plaintiffs' theater set fire to the stage curtain. Further, the Plaintiffs contend that the elements of res ipsa loquitur are satisfied because the Plaintiffs' workers were not allowed on stage during the performance, and the Defendants committed "an act of obvious negligence" by moving a stage light, which positioned it closer to the curtain. (Pls.' Mot. Summ. J. 6, ECF No. 48.)

As the Plaintiffs correctly note, "'exclusive control' is an expansive concept which focuses upon who has the right or power of control and the opportunity to exercise it, rather than

---

adoption of comparative fault, a plaintiff's negligence will not prevent the application of res ipsa loquitur, unless a plaintiff was more than 50% at fault in the incident. *Id.*

actual physical control." *Vogler v. Dominguez*, 624 N.E.2d 56, 61 (Ind. Ct. App. 1993). A

plaintiff is not required to eliminate all other possible causes and inferences. *Gold v. Ishak*, 720

N.E.2d 1175, 1181 (Ind. Ct. App. 1999). Instead, a plaintiff must show either (1) "that the injury

can be traced to a specific instrumentality or cause for which the defendant was responsible"; or

(2) "that the defendant was responsible for all reasonably probable causes to which the accident

could be attributed." *Id.* A defendant need not control the causative instrumentality at the exact

moment of injury, provided that the defendant was the last person in control. *Maroules*, 452 F.3d

at 643 (citing *Shull v. B.F. Goodrich Co.*, 477 N.E.2d 924, 931 (Ind. Ct. App. 1985)).

To establish that the Defendants had exclusive control over the stage light, the Plaintiffs

submitted an affidavit from Mike Dearmond, the Theatre's lighting technician. Dearmond stated

that he was the Theatre employee closest to the fire's area of origin, but during the performance

Theatre employees were not permitted to enter the area where the light was located. While sitting

in the sound booth, Dearmond saw "an orange glow" just before intermission and he entered

Stage Left with a fire extinguisher to address the fire. According to Mr. Dearmond, Ms. Kate

Kong, the circus's performance team coordinator, attempted to prevent him from entering Stage

Left during the live performance. (Dearmond Aff. 2, ECF No. 51-2; Lester Dep. 14:8–14, Apr.

15, 2014, ECF No. 50-1.) The Court notes that even though Kong is associated with Lester in

some capacity, her precise affiliation with Non-Stop and New Shanghai Circus remains unclear.

Throughout their submissions, the Plaintiffs also collectively refer to Non-Stop and New

Shanghai Circus as "NSC."

In response, the Defendants argue that the Plaintiffs' own affidavits show that the

Defendants did not have exclusive control over the stage light. First, Defendant New Shanghai

Circus relies upon the affidavit of Alex Evolga, the Plaintiffs' stage manager, which states that

Evolga supervised the stagehand who placed and secured the lights before the performance. Second, Defendant Non-Stop Creativity Corporation seizes upon Evolga's statements to show that he controlled stage lights during the performance. In the affidavit of Thomas R. Rotering, the Plaintiffs' certified fire investigator, the "Investigative Summary-amended" includes a synopsis of Evolga's interview with Rotering.

> Mr. Evolga . . . explained that these floor lights are secured to the floor in areas that are not used for exit and entrance by the performers and that a specific area is designated for performers to enter and exit the stage. . . . [H]e and the liaison from Shanghai Circus, Kate Kong . . . finalized the lighting set up by programming and testing the lighting and coordinating cues for the show that evening. Mr. Evolga stated that Kate Kong was to give the verbal lighting directions throughout the show to Mr. Evolga who was to run the lighting booth that evening. Mr. Evolga did run the light booth the evening of the fire and he stated that Kate Kong directed the turning on and off of the lights by verbal commands as previously decided.

(Rotering Aff. Ex. B, at 3, ECF No. 50-3). Further, the contract document provided states that the Theatre would provide all the lighting systems, which the Theatre's crew/staff would operate during performances. (Def. New Shanghai Circus Resp. Ex. 5-Standard House Rider ¶¶ 6–7.) This corresponds with the deposition of Mr. Lester, where he testified that the Theatre was responsible for the stage equipment (Lester Dep. 12:21–25, 14:8–14) and the Theatre's employees were needed to manage the performance. (Lester Dep. 15:3–8.)

In light of the evidence presented, the Plaintiffs have failed to prove that the Defendants had exclusive management and control over the Light, and the cases they rely upon are distinguishable. In *Newell*, a woman sued the company hired to maintain a building's elevators after an elevator's doors slammed shut and pinned her between them. 36 F.3d at 577. The court held that the maintenance company had exclusive control over the elevator because even though the building's employees could access the elevator control room, the building hired the

maintenance company for its expertise and the building's employees did not try to fix the elevators themselves. *See id.* at 580–81. Focusing on the injuring instrumentality—which the Plaintiffs identify as the Light (Reply 2–3, ECF No. 57)—reveals that the Defendants are not analogous to the elevator maintenance company. Obviously, the Defendants had to be on stage for the performance, and this included some cooperation with the Plaintiffs' employees regarding the lights. However, unlike the building's arrangement with the maintenance company in *Newell*, the Plaintiff did not relinquish all control to the Defendants. The Plaintiffs' affidavits and the Defendants' evidence show that the Plaintiffs used their expertise to set up the lights and operate them during the show. Further, the Plaintiffs' employee rushed to fix the problem when it was discovered. *Newell* would be more instructive had the Defendants' staff set up the lights and assumed total control during the performance, but that is not the present scenario.

The Plaintiffs also correctly cite *Rector v. Oliver*, 809 N.E.2d 887, 891–92 (Ind. Ct. App. 2004) for the proposition that a defendant may have exclusive management and control over a light fixture that another person installed. However, in *Rector* a customer sued the storeowners after a ceiling light fell on her. *Id.* at 888. The storeowners argued that they did not have exclusive management and control over the light because it was already installed when they purchased the store. *Id.* at 891. Putting aside that the Plaintiffs installed the stage lights, the Court is reluctant to hold that a defendant who agreed to conduct a single performance at a theater, where the theater's employees would operate all lighting equipment during the performance, should be treated like a storeowner simply due to the defendant's presence on the theater's stage. Given that the Plaintiffs only presented evidence showing that its employees were not physically allowed on the stage during the performance, and that Kong attempted to stop the Plaintiffs' light

technician from entering stage left just before intermission, the Plaintiffs have not met their

burden to show that the Defendants had exclusive management and control over the stage light.[5]

## B.   Breach of Contract

When a contract is unambiguous, summary judgment is particularly appropriate to

determine the contract's meaning. *J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1035 (7th

Cir. 2005). Under Federal Rule of Civil Procedure 56, the moving party has the burden to show

that it is entitled to judgment under established principles. *Gerhartz v. Richert*, 779 F.3d 682,

685–86 (7th Cir. 2015) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970)). Thus,

even if the nonmovant does not respond, a movant who has failed to discharge this burden is not

entitled to summary judgment. *Id.*

The Plaintiffs' motion cites the April 22, 2010 contract executed between the Theatre and

New Shanghai Circus Touring, LLC f/s/o New Shanghai Circus. (Pls.' Mot. Summ. J. Ex. 5-

Complaint and Performance Agreement, at 8–10, ECF No. 50-5.) The Plaintiffs rely upon the

term providing that "[New Shanghai Circus Touring, LLC] shall have the sole and exclusive

control over the production, presentation and performance of the engagement hereunder,

---

[5] Regarding the second inquiry for res ipsa loquitur—whether the injury was one that would not occur absent negligence—the Plaintiffs provided affidavits from two experts, Matthew A. Thurow and Thomas R. Rotering [ECF Nos. 50-2, 50-3], to analyze the fire. The Plaintiffs' briefing also asserted that common sense showed the Defendants were negligent. (Pls.' Mot. Summ. J. 6 ("Removing gaffers tape obviously intended to secure a hot lamp and rotating it 90 degrees and forward to a position where it contacted the ignitable curtain is an act of obvious negligence."); Reply 2 ("Stage curtains do not ignite during performances without negligence on the part of those persons in control.").) Having held that the Plaintiffs did not establish the first element of res ipsa loquitur, this Court does not address whether the Plaintiffs have shown "by common sense or expert testimony that the injury was one that would not ordinarily occur in the absence of proper care on the part of those controlling the instrumentality." *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006) (citing *Syfu*, 826 N.E.2d 705); *Newell*, 36 F.3d at 580 (acknowledging that the district court did not address the second prong when it determined the plaintiff had not met her burden on the first prong).

including, but not limited to, the details, means and methods of the performances of the performing artists hereunder." (Pls.' Mot. Summ. J. Ex. 5-Complaint and Performance Agreement ¶ 2, at 9.) Then, to establish that Non-Stop is bound by this contract, the Plaintiffs point to Mr. Lester's testimony that "Non-Stop Creativity has purchased liability insurance for everyone on the team." (Lester Dep. 17:12–17.) Based on this evidence, combined with the assertion that the Defendants controlled the stage and that the Plaintiffs have proven that the Defendants moved the stage light, the Plaintiffs conclude that breach has been proven.[6]

First, although a connection likely exists between Non-Stop and New Shanghai Circus, the nature of the connection is not clear from the Plaintiffs' submissions. As in the Complaint, the Plaintiffs' briefing collectively refers to Non-Stop and New Shanghai Circus without presenting any evidentiary support besides what appears in the preceding paragraph. Further, the Answer filed by Non-Stop and New Shanghai Circus denies the complaint paragraphs that allege the "Defendants jointly or severally took and maintained control of the stage area," and that the Defendants "contracted to control the details, means and/or methods of performance." (Compl. ¶¶ 6, 31; Answer ¶ 5.) Since the Plaintiffs have not clearly shown the relationship between the Defendants, this Court finds summary judgment would be improper.

Second, the Plaintiffs' evidence cited in support of their res ipsa loquitur claim presents a picture of the circumstances surrounding the fire; but it does not show that no rational juror could find for the Defendants on breach of contract. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

---

[6] Although the text of Rule 56 does not require the movant to cite legal authority, the Plaintiffs have not cited any cases. *McMillian v. Villages of Ind., Inc.*, No. 2:02 CV 422, 2005 WL 2347268, at *1 (N.D. Ind. Sept. 26, 2005) (stating that the party's sparse legal citation was not fatal provided that the factual basis was clearly articulated); *cf. Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir. 1995) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.") (citation and quotation marks omitted). Because the Plaintiffs' presentation was incomplete, the Court pieced together much of the factual background by reviewing evidence in the record that the Plaintiffs do not cite.

475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted); (Pls.' Mot. Summ. J. 6) (arguing, in the res ipsa loquitur section, that "reasonable jurors could only conclude that [the Defendants'] personnel bumped or deliberately adjusted [sic] stage light bringing it into close proximity with the ignitable curtain").)[7] The affidavits of the Theatre employees who witnessed the fire do not describe what caused it. Instead, the Plaintiffs' conclusion seems to be drawn from single sentences at the end of each expert's affidavit, where the experts conclude that a performer must have bumped the Light to start the fire. Although the Plaintiffs' experts provide a scientific discussion of what materials may have provided the fire's initial fuel, the experts do not analyze why a performer must have bumped the Light. *Bourke v. Conger*, 639 F.3d 344, 347 (7th Cir. 2011) ("In order for 'an expert report to create a genuine issue of fact, it must provide not merely . . . conclusions, but the basis for the conclusions.'" (quoting *Vollmert v. Wis. Dep't of Transp.*, 197 F.3d 293, 298 (7th Cir. 1999))); *Id.* at 347–48 ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." (quoting *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 658 (7th Cir. 1998))). Without showing more, a jury must decide whether the Defendants breached any contract.

---

[7] The Plaintiffs' conclusion that the Defendants breached the contract seems to be based on the assumption that this Court would grant summary judgment on the res ipsa loquitur claim, and that the doctrine creates more than an inference of negligence. (*See* Pls.' Mot. Summ. J. 6 (asserting that because the elements of res ipsa loquitur have been proven, this Court should enter judgment as to liability and schedule the damages hearing).) The Plaintiffs' Reply abandons this view and presents a new argument for res ipsa loquitur, but the Reply does not readdress breach of contract.

**CONCLUSION**

For the foregoing reasons, the Court DENIES the Plaintiffs' Motion [ECF No. 48].

Counsel for Plaintiffs also filed a Motion for Trial Date [ECF No. 60]. The Court GRANTS this

Motion [ECF No. 60], and it will, by separate order, schedule a telephonic conference to set a

trial schedule. The Plaintiffs' Request for Oral Arguments on Summary Judgment [ECF No. 61],

filed on December 11, 2015, is DENIED as MOOT.

SO ORDERED on December 15, 2015.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION
